**SOCIAL SECURITY ADMINISTRATION**

~~140~~

Refer To:
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
Elizabeth Dee Stone

Office of Disability Adjudication and Review
Suite 300
1227 25th St NW
Washington, DC 20037-8199
Tel: (866)414-6259 / Fax: (202)254-0634

January 5, 2016

Elizabeth Dee Stone
1434 Potomac Ave, SE
Suite 2
Washington, DC 20003

## NOTICE OF HEARING-IMPORTANT REMINDER

We recently mailed you a Notice stating the time and place of the hearing you requested. We enclosed with your Notice an Acknowledgement Form, which we asked you to complete and return. If you have **not** yet returned the Acknowledgement Form, please call the number listed above and tell us if you plan to come to your hearing. If you do not plan to come to your hearing, please tell us why you cannot come.

We expect you to be present at the hearing scheduled for:

**Day:** Tuesday          **Date:**   January 19, 2016          **Time:** 10:00 AM
                                                                      Eastern (ET)

**Room:** A          **Address:**   1227 25th St., NW
                                    Ste. 301
                                    Washington, DC 20037

If you do not appear at this hearing, and do not provide a good reason why you did not appear, the administrative law judge (ALJ) will **dismiss** your request for hearing without further notice. If the ALJ dismisses your request for hearing, the prior decision will become the final decision of the Commissioner on your application.

If you do not understand this notice, or if some unexpected problem arises, please call this hearing office at the phone number listed above.

Sincerely,

*Social Security Administration*

Form HA-L503 (04-2013)
Claimant

EXHIBIT 48

Page 1 of 2

See Next Page

Elizabeth Dee Stone (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)

cc: Steven M Oster
    1850 M St NW
    Suite 280
    Washington, DC 20036

142

# Social Security Administration
## Notice Of Proposed Decision

OCO ODO
1500 WOODLAWN DRIVE
BALTIMORE MD 21241

Date: February 10, 2008
Claim Number: 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 A

ELIZABETH STONE
UNIT 2
1434 POTOMAC AVE
WASHINGTON DC 20003-3036

We have information about your earnings that could affect your Social Security disability payments. Based on this information, it appears we will decide that your disability ended because of substantial work December 2005 and that you are not entitled to payments for:

March 2006 through March 2007,
May 2007 through October 2007,
January 2008 and continuing.

We are writing this letter to give you a chance to give us more information that you want us to consider. Please review the following information we are using to make our decision. You have 10 days to give us more information before we make our decision final. The 10 days start the day after you receive this letter. We assume that you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period. If you need more time, let us know right away.

**The Information We Have**

We are considering the following reports in evaluating your claim:

- Your signed statement regarding work and earnings
- Social Security Administration Earnings Records
- Work information reported to us by your employer

We are considering the following work in this decision:

| Work Start | Work End | Employer |
|---|---|---|
| October 2004 | December 2004 | SELF-EMPLOYMENT |
| March 2005 | Not Ended | GALLAUDET UNIVERSITY |

See Next Page

EXHIBIT 49

Page 1 of 4


PLAINTIFF'S EXHIBIT 3

There was no evidence to indicate that you did not fully earn the salary you were paid.

There was no evidence to indicate that you had impairment related work expenses which might have affected this decision.

**What We Plan To Do**

Based on the information we have, it appears we will decide that your disability ended because of substantial work as of December 2005. Please read the following information about what will happen to your payments if we make this decision.

**What Happens When a Person Goes To Work**

Going to work does not affect payments right away. That's because a person is allowed a period of 9 trial work months to test his or her ability to work in spite of health problems.

Beginning January 2008, a trial work month is any month in which a person earns more than:

- $670 in gross wages, or;
- $670 in net self-employment earnings, or;
- works more than 80 hours of work in self-employment.

In 2007, the trial work period monthly earnings amount was $640. The amount was $620 in 2006 , $590 in 2005, $580 in 2004 and $570 in 2003.

Beginning 1992, the 9 months of work must take place in a 60-month period to end the trial work period. However, the 9 months do not have to be in a row.

Our records show your trial work period ended November 2005 and that your nine months of trial work are:

October 2004
November 2004
December 2004
April 2005
June 2005
August 2005
September 2005
October 2005
November 2005

**What Happens After The Trial Work Period**

After the trial work period, several things happen.

Your disability ends if your work activity shows your ability to do substantial work. However, we pay benefits for the month disability ends and the following 2 months no matter how much is earned. Based on the information we have, in your case, this is December 2005 through February 2006.

You get an extended period of eligibility that begins right after the trial work period. This is a 36 month period when we restart payments for any month(s) your work is not substantial if your health problems still meet our rules. Based on the information we have, your extended period of eligibility began December 2005 and will end if substantial work is performed after 36 months following this date.

## What Is Substantial Work

Generally, substantial work is physical or mental work a person is paid to do. Work can be substantial even if it is part-time. To decide if a person's work is substantial, we consider the nature of the job duties, the skill and experience needed to do the job, and how much the person actually earns.

A person's work may be different than before his or her health problems began. It may not be as hard to do and the pay may be less. However, we may still find that the work is substantial under our rules.

Usually, we find that work is substantial if gross monthly earnings average more than the following amounts:

- In 2008         $940
- In 2007         $900
- In 2006         $860
- In 2005         $830
- In 2004         $810
- In 2003         $800

If a person is self-employed, we consider the kind and value of his or her work, including his or her part in the management of the business, as well as income, to decide if the work is substantial.

You will be notified later about any overpayment or underpayment due in this case. You will also be notified about any change in Medicare coverage.

## Information About Medicare

If you have Medicare and your disabling condition continues under our rules your coverage will continue for at least 93 months after your trial work period.

**If We Do Not Hear From You**

If we do not hear from you within the next 10 days, we will make our decision based on the information we have now.  The 10 days start the day after you receive this letter.  We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period. When we make our decision, we will send you another letter.

**If You Have Any Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security.  If you have any specific questions, you may call us toll-free at 1-800-772-1213.  We can answer most questions over the phone.  If you are deaf or heard of hearing, you may call our TTY number, 1-800-325-0778.  You may also write the Social Security Administration, P.O. Box 17775, Baltimore, Maryland 21235-7775, USA. Please be sure to include your claim number if you do write.  However, if you visit an office, please take this letter.  It will help the people there answer your questions.

Carolyn L. Simmons
Associate Commissioner for Central Operations

146



PLAINTIFF'S
EXHIBIT

# Social Security Administration
# Billing Statement
Important Information

Western Program Service Center
P.O. Box 2000
Richmond, California 94802-1791



0001730 RECM35 1A  0.790
ELIZABETH D STONE
UNIT 2
1434 POTOMAC AVE
WASHINGTON DC 20003-3036

| | |
|---|---|
| STATEMENT DATE: | 10/17/12 |
| ACCOUNT NUMBER: | 55581639501 |
| AMOUNT DUE: | $19,690.00 |

NEW BALANCE                                               $19,690.00

PAYMENT OF NEW BALANCE OR AMOUNT DUE
MUST REACH US BY:                                          11/03/12

## DID YOU FORGET?

This statement concerns an overpayment of Social Security benefits paid to
ELIZABETH D STONE, A.

We have not received the payment due.  Please send us the full payment right
away.

To request to repay a smaller amount monthly over a longer period of time,
please call us at the telephone number below.

If you have mailed the payment amount due within the past week, please
disregard this statement.

EXHIBIT ____50____

Page___1___ of __1__

## If You Have Any Questions

If you have any questions, you may call us at 1-800-227-8835 TOLL FREE.  The
office hours are Monday through Friday, 8:00 AM to 4:30 PM PT.  Please have

147

# STEVEN M. OSTER

## ATTORNEY-AT-LAW

February 1, 2016

Mary Garcia
Social Security Administration
Office of Disability Adjudication
    and Review
1227 25th St. NW, Suite 300
Washington, DC 20037

     Re: **Elizabeth Stone (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)**

Dear Ms. Garcia:

     Enclosed please find a post-hearing brief and waiver application for submission to Judge Ray. Please call me if you have any questions.

     Thank you for your assistance.

               Sincerely,

               Steven M. Oster

---

THE OSTER LAW FIRM
1850 M STREET N.W.•SUITE 280
WASHINGTON, DC 20036
202.596.5291(PHONE)•202.747.5862 (FAX)
STEVE@OSTERLAWFIRM.COM

EXHIBIT _S1_
Page _1_ of _13_

**148**

BEFORE THE SOCIAL SECURITY ADMINISTRATION
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

| | |
|---|---|
| In re: | |
| | No. 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 |
| Elizabeth Stone | Hon. Thomas Mercer Ray, A.L.J. |
| _____/ | |

## CLAIMANT'S POST-HEARING BRIEF

Claimant Elizabeth Stone ("Claimant"), by and through undersigned counsel, respect-fully submits this post-hearing brief with the permission of this Court. Because Claimant (a) was without fault in connection with the Administration's overpayment of benefits, and (b) recovery of the overpayment would be against equity and good conscience, she satisfies Con-gresses' and the Administration's requirements for a waiver of collection.[1]

### FACTUAL BACKGROUND

By way of background, the Administration contends Claimant received $19,690 in dis-ability benefits to which she was not entitled between March 2006 and February 2008. The Administration contends during that time Claimant was engaged in substantial work during that time frame, earning in excess of applicable ceilings. Claimant does not dispute the earnings attributed to her during the relevant time period.

However, Claimant testified she met with the Administration three times between 2005 and 2007 in order to determine whether she was entitled to continued benefits while she was working at Gallaudet University. In both meetings Claimant disclosed her employment and

---

[1] At the Court's request, Claimant is also submitting a completed application for waiver (at-tached hereto).

Case 1:17-cv-01952-CRC-DAR   Document 8-2   Filed 12/28/17   Page 15 of 61

149

the amount she was earning. She was completely candid. Subsequently, the Administration

confirmed her eligibility and **increased** her benefits. Claimant introduced two letters from the

Administration, dated April 7, 2006 and November 2, 2007, received after her in-person meet-

ings in which the Administration states:

> We checked our records to see if any changes to your benefits are
> necessary.

> We are increasing your benefit to give you credit for your earn-
> ings ... which were not included when we figured your benefit
> before.

(Hearing Exs. 1 and 2).

The Administration continued to pay benefits to Claimant until February 2008, when

Claimant directed that benefits cease. Soon after, she received a bill for over $24,000.[2]

## ARGUMENT

Congress has erected a statutory barrier to recovery of disability payments from "any

person who is without fault if such adjustment or recovery would defeat the purpose of this

subchapter or would be against equity and good conscience." 42 U.S.C.A. § 404 (West). The

Administration's criteria for waiver of recovery are set forth at 20 C.F.R. §§ 404.506(a) –

404.512. A person is "without fault" for an overpayment where she accepted payment in reli-

ance on erroneous information from the Administration regarding the interpretation of the

Social Security Act or the Administration's regulations. 20 C.F.R. § 404.510a (applicable to

---

[2] The Administration took a $5,079 federal tax return due Claimant in 2011, leaving a balance
sought of $19,690.

-2-

entitlement overpayments). Recovery of an overpayment is also "against equity and good conscience" if a person relied on erroneous information provided by the Administration. 20 C.F.R. § 404.512.

Ms. Stone's testimony, together with the documentary evidence, establish she relied on erroneous information provided by the Administration at three separate in-person meetings. Not only did the Administration inform her she was entitled to continued payments, on two separate occasions the Administration increased her payments.

In light of the Administration's written advice to Claimant, it would be unreasonable for the Court to find she accepted payments she knew or should have known were incorrect. 20 C.F.R. § 404.507(c). Claimant expressly denied knowing she was no longer entitled to the payments. There is no evidence Claimant was not forthcoming during her meetings with the Administration. She directed the Administration to stop the payments because she no longer needed the benefits, not because she believed they were being paid in error. Under the circumstances, the statute and the Administration's regulations require that recovery of the overpayment be waived.

## CONCLUSION

For all of the foregoing reasons, Claimant respectfully requests the Court find that recovery of the overpayment be waived as a matter of law.

February 1, 2016

Respectfully submitted,

Steven M. Oster
OSTER LAW FIRM
1850 M Street, N.W., Suite 280
Washington, DC 20036

-3-

4

151

202.596.5291 (ph)
202.747.5862 (f)
703.577.8785
steve@osterlawfirm.com

*Counsel to Claimant Elizabeth Stone*

5

SOCIAL SECURITY ADMINISTRATION

Form Approved **152**
OMB No. 0960-0037

# Request For Waiver Of Overpayment Recovery Or Change In Repayment Rate

We will use your answers on this form to decide if we can waive collection of the overpayment or change the amount you must pay us back each month. If we can't waive collection, we may use this form to decide how you should repay the money.

Please answer the questions on this form as completely as you can. We will help you fill out the form if you want. If you are filling out this form for someone else, answer the questions as they apply to that person.

| FOR SSA USE ONLY | | |
|---|---|---|
| ROAR Input | ☐ Yes | |
| | ☐ No | |
| Input Date | | |
| Waiver | ☐ Approval | |
| | ☐ Denial | |
| SSI | ☐ Yes ☐ No | |
| AMT OF OP $ | | |
| PERIOD (DATES) OF OP | | |

1. A. Name of person on whose record the overpayment occurred: **Elizabeth Stone**

   B. Social Security Number: **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**

   C. Name of overpaid person(s) making this request and his or her Social Security Number(s):

   _____

   _____

   _____

2. Check any of the following that apply. (Also, fill in the dollar amount in B, C, or D.)

   A. ☒ The overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons.

   B. ☐ I cannot afford to use all of my monthly benefit to pay back the overpayment. However I can afford to have $ _____ withheld each month.

   C. ☐ I am no longer receiving Supplement Security Income (SSI) payments. I want to pay back $ _____ each month instead of paying all of the money at once.

   D. ☐ I am receiving SSI payments. I want to pay back $ _____ each month instead of paying 10% of my total income.

6

**153**

## SECTION I - INFORMATION ABOUT RECEIVING THE OVERPAYMENT

**3.**  A. Did you, as representative payee, receive the overpaid benefits to use for the beneficiary?

☒ Yes    ☐ No (Skip to Question 4)

B. Name and address of the beneficiary

1434 Potomac Ave SE # 2 Washington DC 20003

C. How were the overpaid benefits used?

Living expenses

**4.**  If we are asking you to repay someone else's overpayment:

A. Was the overpaid person living with you when he/she was overpaid?          ☐ Yes ☐ No

B. Did you receive any of the overpaid money?          ☐ Yes ☐ No

C. Explain what you know about the overpayment AND why it was not your fault.

N/A

**5.**  Why did you think you were due the overpaid money and why do you think you were not at fault in causing the overpayment or accepting the money?

I was still receiving payments even after I've alerted SSA several times to end payments. I don't deserve to be penalized for overpayment when SSA has confirmed they'd stop the payments and yet kept telling me I was eligible to receive benefits sent home and yet kept telling me I was eligible to receive benefits (the payments)

**6.**  A. Did you tell us about the change or event that made you overpaid? If no, why didn't you tell us?          ☒ Yes ☐ No

B. If yes, how, when and where did you tell us? If you told us by phone or in person, who did you talk with and what was said?

In person twice @ SSA office on 21st & N St NW.  Twice Over phone  - during 2004 - 2008.

C. If you did not hear from us after your report, and/or your benefits did not change, did you contact us again?          ☒ Yes ☐ No

**7.**  A. Have we ever overpaid you before?          ☐ Yes ☒ No

If yes, on what Social Security number? _____

B. Why were you overpaid before? If the reason is similar to why you are overpaid now, explain what you did to try to prevent the present overpayment.

7

**154**

FOR SSA USE ONLY

| NAME: |
| SSN: |

## SECTION II - YOUR FINANCIAL STATEMENT

You need to complete this section if you are asking us either to waive the collection of the overpayment or to change the rate at which we asked you to repay it. Please answer all questions as fully and as carefully as possible. We may ask to see some documents to support your statements, so you should have them with you when you visit our office.

### EXAMPLES ARE:

- Current Rent or Mortgage Books
- Savings Passbooks
- Pay Stubs
- Your most recent Tax Return

- 2 or 3 recent utility, medical, charge card, and insurance bills
- Cancelled checks
- Similar documents for your spouse or dependent family members

Please write only whole dollar amounts-round any cents to the nearest dollar. If you need more space for answers, use the "Remarks" section at the bottom of page 7.

**8.**  **A.** Do you now have any of the overpaid checks or money in your possession (or in a savings or other type of account)?  ☐ Yes  Amount: _____  ☒ No   Return this amount to SSA

**B.** Did you have any of the overpaid checks or money in your possession (or in a savings or other type of account) at the time you received the overpayment notice?  ☐ Yes  Amount: _____  ☒ No   Answer Question 9.

**9.**  Explain why you believe you should not have to return this amount.

Letters all said  I was eligible to receive the benefits.

ANSWER 10 AND 11 ONLY IF THE OVERPAYMENT IS SUPPLEMENTAL SECURITY INCOME (SSI) PAYMENTS. IF NOT, SKIP TO 12.

**10.**  **A.** Did you lend or give away any property or cash after notification of the overpayment?  ☐ Yes (Answer Part B)  ☐ No (Go to question 11.)

**B.** Who received it, relationship (if any), description and value.

**11.**  **A.** Did you receive or sell any property or receive any cash (other than earnings) after notification of this overpayment?  ☐ Yes (Answer Part B)  ☐ No (Go to question 12.)

**B.** Describe property and sale price or amount of cash received.

**12.**  **A.** Are you now receiving cash public assistance such as Supplemental Security Income (SSI) payments?  ☐ Yes (Answer B and C and See note below)  ☒ No

**B.** Name or kind of public assistance          **C.** Claim Number

**IMPORTANT:** If you answered "YES" to question 12, DO NOT answer any more questions on this form. Go to page 8, sign and date the form, and give your address and phone number(s). Bring or mail any papers that show you receive public assistance to your local Social Security office as soon as possible.

**155**

## Members Of Household

**13.** List any person (child, parent, friend, etc.) who depends on you for support AND who lives with you.

| NAME | AGE | RELATIONSHIP (If none, explain why the person is dependent on you) |
|---|---|---|
| Emmet Nirenberg | 3 | Child / Son |
| Judson Nirenberg | | Spouse |

## Assets - Things You Have And Own

**14.** **A.** How much money do you and any person(s) listed in question 13 above have as cash on hand, in a checking account, or otherwise readily available? $ _____

**B.** Does your name, or that of any other member of your household appear, either alone or with any other person, on any of the following?

| TYPE OF ASSET | OWNER | BALANCE OR VALUE | PER MONTH | SHOW THE INCOME (interest, dividends) EARNED EACH MONTH. (If none, explain in spaces below. If paid quarterly, divide by 3). |
|---|---|---|---|---|
| SAVINGS (Bank, Savings and Loan, Credit Union) | self | $ 27,091 | $ 500 | |
| CERTIFICATES OF DEPOSIT (CD) | N/A | $ N/A | $ N/A | N/A |
| INDIVIDUAL RETIREMENT ACCOUNT (IRA) | self | $ 75,000 | $ 0 | |
| MONEY OR MUTUAL FUNDS | self | $ 9,000 | $ 0 | |
| BONDS, STOCKS | self | $ 50,000 | $ 0 | |
| TRUST FUND | N/A | $ | $ | |
| CHECKING ACCOUNT | self | $ 1,520 | $ 3,600 | |
| OTHER (EXPLAIN) | | $ | $ | |
| TOTALS | | $ 162,541 | $ 4,100 | Enter the "Per Month" total on line (k) of question 18. |

**15.** **A.** If you or a member of your household own a car, (other than the family vehicle), van, truck, camper, motorcycle, or any other vehicle or a boat, list below.

| OWNER | YEAR/MAKE/MODEL | PRESENT VALUE | LOAN BALANCE (if any) | MAIN PURPOSE FOR USE |
|---|---|---|---|---|
| N/A | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

**B.** If you or a member of your household own any real estate (buildings or land), OTHER than where you live, or own or have an interest in, any business, property, or valuables, describe below.

| OWNER | DESCRIPTION | MARKET VALUE | LOAN BALANCE (if any) | USAGE INCOME (rent etc.) |
|---|---|---|---|---|
| ~~self~~ | | $ | $ | |
| Jud Nirenberg | townhouse | $ 168,000 | $ | 1,100 / mo |
| | | $ | $ | |
| | | $ | $ | |

9

156

## Monthly Household Income

If paid weekly, multiply by 4.33 (4 1/3) to figure monthly pay. If paid every 2 weeks, multiply by 2.166 (2 1/6). If self-employed, enter 1/12 of net earnings. Enter monthly TAKE HOME amounts on line A of question 18 also.

**16. A. Are you employed?** ☒ YES (Provide information below)   ☐ NO (Skip to B)

| Employer name, address, and phone: (Write "self" if self-employed) | |
|---|---|
| Gallaudet University<br>800 Florida Ave NE | Monthly pay before deduction (Gross) $ 7,822.40 |
| | Monthly TAKE-HOME pay (NET) $ 3,710 |

**B. Is your spouse employed?** ☒ YES (Provide information below)   ☐ NO (Skip to C)

| Employer(s) name, address, and phone: (Write "self" if self-employed) | |
|---|---|
| Control Risks<br>1600 K St NW WDC 20006 | Monthly pay before deduction (Gross) $ 14,870 |
| | Monthly TAKE-HOME pay (NET) $ 3,000 |

**C. Is any other person listed in Question 13 employed?** ☐ YES   ☒ NO (Go to Question 17)   Name(s)

| Employer(s) name, address, and phone: (Write "self" if self-employed) | |
|---|---|
| | Monthly pay before deduction (Gross) $ |
| | Monthly TAKE-HOME pay (NET) $ |

**17. A. Do you, your spouse or any dependent member of your household receive support or contributions from any person or organization?** ☐ YES (Answer B)   ☒ NO (Go to question 18)

B. How much money is received each month? $ _____ (Show this amount on line (J) of question 18)   SOURCE _____

BE SURE TO SHOW MONTHLY AMOUNTS BELOW - If received weekly or every 2 weeks, read the instruction at the top of this page.

| 18. INCOME FROM #16 AND #17 ABOVE AND OTHER INCOME TO YOUR HOUSEHOLD | YOURS | √ | SPOUSE'S | √ | OTHER HOUSEHOLD MEMBERS | √ | SSA USE ONLY |
|---|---|---|---|---|---|---|---|
| A. TAKE HOME Pay (Net) (From #16 A, B, C, above) | $ 3,710 | — | $ 3,000 | ☐ | $ | | ☐ |
| B. Social Security Benefits | N/A | ☐ | N/A | ☐ | | | ☐ |
| C. Supplemental Security Income (SSI) | N/A | ☐ | N/A | ☐ | | | ☐ |
| D. Pension(s) (VA, Military, Civil Service, Railroad, etc.) TYPE | N/A | ☐ | N/A | ☐ | | | ☐ |
| TYPE | N/A | ☐ | N/A | ☐ | | | ☐ |
| E. Public Assistance (Other than SSI) TYPE | N/A | ☐ | N/A | ☐ | | | ☐ |
| F. Food Stamps (Show full face value of stamps received.) | N/A | ☐ | N/A | ☐ | | | ☐ |
| G. Income from real estate (rent, etc.) (From question 15B) | N/A | ☐ | 1,100 | ☒ | | | ☐ |
| H. Room and/or Board Payments (Explain in remarks below.) | N/A | ☐ | N/A | ☐ | | | ☐ |
| I. Child Support/Alimony | N/A | ☐ | N/A | ☐ | | | ☐ |
| J. Other Support (From #17 (B) above) | N/A | ☐ | N/A | ☐ | | | ☐ |
| K. Income From Assets (From question 14) | $ 500 /mo | ☐ | | | | | ☐ |
| L. Other (From any source, explain below) | $ | ☐ | | | | | ☐ |
| REMARKS   TOTALS | $ 4,210 | | $ 4,100 | | $ | | |

GRAND TOTAL $ 8,310
(Add 3 total blocks above)

10

157

## Monthly Household Expenses

If the expense is paid weekly or every 2 weeks, read the instruction at the top of Page 5. Do NOT list an expense that is withheld from income (Such as Medical Insurance). Only take home pay is used to figure income.

Show "CC" as the expense amount if the expense (such as clothing) is part of CREDIT CARD EXPENSE SHOWN ON LINE (F).

| | | $ PER MONTH | SSA USE ONLY |
|---|---|---|---|
| 19. | A. Rent or Mortgage (If mortgage payment includes property or other local taxes, insurance, etc. DO NOT list again below.) | $2,276.94 | |
| | B. Food (Groceries (include the value of food stamps) and food at restaurants, work, etc.) | $350.00 | |
| | C. Utilities (Gas, electric, telephone) | $25.00 | |
| | D. Other Heating/Cooking Fuel (Oil, propane, coal, wood, etc.) | | |
| | E. Clothing | $200.00 | |
| | F. Credit Card Payments (show minimum monthly payment allowed) | $580.00 | |
| | G. Property Tax (State and local) | | |
| | H. Other taxes or fees related to your home (trash collection, water-sewer fees) | $300.00 | |
| | I. Insurance (Life, health, fire, homeowner, renter, car, and any other casualty or liability policies) | $300.00 | |
| | J. Medical-Dental (After amount, if any, paid by insurance) | $200.00 | |
| | K. Car operation and maintenance (Show any car loan payment in (N) below) | N/A | |
| | L. Other transportation | $50 | |
| | M. Church-charity cash donations | | |
| | N. Loan, credit, lay-away payments (If payment amount is optional, show minimum) | N/A | |
| | O. Support to someone NOT in household (Show name, age, relationship (if any) and address) | N/A | |
| | P. Any expense not shown above (Specify) | | |
| | EXPENSE REMARKS (Also explain any unusual or very large expenses, such as medical, college, etc.) | TOTAL $ 3,641.94 | |

//

**158**

## Income And Expenses Comparison

20. A. Monthly income (Write the amount here from the "Grand Total" of #18.)  $ 3,710

   B. Monthly Expenses (Write the amount here from the "Total" of #19.)  $ 3,041.94

   C. Adjusted Household Expenses  +$25

   D. Adjusted Monthly Expenses (Add (B) and (C))  $ 25.00

21. If your expenses (D) are more than your income (A), explain how you are paying your bills.

   use savings

| | FOR SSA USE ONLY | |
|---|---|---|
| ☐ | INC. **EXCEEDS** ADJ EXPENSE | $ + |
| ☐ | INC **LESS THAN** ADJ EXPENSE | $ - |

## Financial Expectation And Funds Availability

22. A. Do you, your spouse or any dependent member of your household expect your or their financial situation to change (for the better or worse) in the next 6 months? (For example: a tax refund, pay raise or full repayment of a current bill for the better-major house repairs for the worse).   ☒ YES (Explain on line below)   ☐ NO

   house repairs

   B. If there is an amount of cash on hand or in checking accounts shown in item 14A, is it being held for a special purpose?   ☐ NO (Amount on hand)   ☐ NO (Money available for any use)   ☒ YES (Explain on line below)

   mutual fund
   family planning

   C. Is there any reason you CANNOT convert to cash the "Balance or Value" of any financial asset shown in item 14B.   ☒ YES (Explain on line below)   ☐ NO

   IRA, MF + annuity restrictions apply

   D. Is there any reason you CANNOT SELL or otherwise convert to cash any of the assets shown in items 15A and B?   ☒ YES (Explain on line below)   ☐ NO

   college fund & house downpayment

**Remarks Space** – If you are continuing an answer to a question, please write the number (and letter, if any) of the question first.

12

**159**

REMARKS SPACE (Continued)

## PENALTY CLAUSE, CERTIFICATION AND PRIVACY ACT STATEMENT

I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge. I understand that anyone who knowingly gives a false or misleading statement about a material fact in this information, or causes someone else to do so, commits a crime and may be sent to prison, or may face other penalties, or both.

## SIGNATURE OF OVERPAID PERSON OR REPRESENTATIVE PAYEE

SIGNATURE (First name, middle initial, last name) (Write in ink)

SIGN
HERE

DATE (Month, Day, Year)

1/29/16

WORK TELEPHONE NUMBER IF WE MAY CALL YOU AT WORK (Include area code)

202 559 5079

HOME TELEPHONE NUMBER ( Include area code )

202 615 0955

MAILING ADDRESS (Number and street, Apt. No., P.O. Box, or Rural Route)

1434 Potomac Ave SE #2

| CITY AND STATE | ZIP CODE |
|---|---|
| Washington dc | 20003 |

ENTER NAME OF COUNTY (IF ANY) IN WHICH YOU NOW LIVE

Witnesses are required ONLY if this statement has been signed by mark (X) above. If signed by mark (X),two witnesses to the signing who know the individual must sign below, giving their full addresses.

| SIGNATURE OF WITNESS | SIGNATURE OF WITNESS |
|---|---|
| ADDRESS (Number and street, City, State, and ZIP Code) | ADDRESS (Number and street, City, State, and ZIP Code) |

**160**

# STEVEN M. OSTER

## ATTORNEY-AT-LAW

May 6, 2016

*via Facsimile (703.605.7101)*

Appeals Council, ODAR
5107 Leesburg Pike
Falls Church, VA 22041

    Re:   **Elizabeth Stone Nirenberg (555.81.6395)**

Dear Sir or Madam:

    I write in connection with the above referenced Request for Review of Hearing Decision, received by the Council on May 4, 2016 (copy attached). I represent the Claimant, Elizabeth Stone Nirenberg. I request a 30 day extension to file additional evidence. I also request a meeting with an Administration representative to discuss settlement.

    Please call, email, or respond in writing to the following address: 305 Center St. North, Vienna, VA 22180. Thank you for your assistance.

Sincerely,

Steven M. Oster

Enc.

---

THE OSTER LAW FIRM
1850 M STREET N.W.•SUITE 280
WASHINGTON, DC 20036
202.596.5291 (PHONE)•202.747.5862 (FAX)
STEVE@OSTERLAWFIRM.COM

Exhibit AC 52
Page 1 of 2

SOCIAL SECURITY ADMINISTRATION

Form Approved
OMB No. 0960-0277

# REQUEST FOR REVIEW OF HEARING DECISION/ORDER

**(Do not use this form for objecting to a recommended ALJ decision.)**

161

See
Privacy Act
Notice

*(Either mail the signed original form to the Appeals Council at the address shown below, or take or mail the signed original to your local Social Security office, the Department of Veterans Affairs Regional Office in Manila, or any U.S. Foreign Service Post and keep a copy for your records.)*

| 1. CLAIMANT NAME | 2. CLAIMANT SSN | 3. CLAIM NUMBER (If different than SSN) |
|---|---|---|
| Elizabeth Stone Nirenberg | 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 | |

4. I request that the Appeals Council review the Administrative Law Judge's action on the above claim because:
The ALJ decision is contrary to law and contains material errors of fact. The decision should be reversed and a waiver of repayment granted or a remand ordered.

[X] Please grant me an extension of time to submit evidence or argument.

## ADDITIONAL EVIDENCE

If you have additional evidence that relates to the period on or before the date of the hearing decision, you must inform the Appeals Council about it or submit it. If you have a representative, then your representative must help you obtain the evidence unless the evidence falls under an exception. You may also submit any other additional evidence to the Appeals Council. If you need additional time to submit evidence or legal argument, you must request an extension of time in writing now. This will ensure that the Appeals Council has the opportunity to consider the additional evidence before taking its action. If you submit neither evidence nor legal argument now or within any extension of time the Appeals Council grants, the Appeals Council will take its action based on the evidence currently in your file.

**IMPORTANT: WRITE YOUR SOCIAL SECURITY NUMBER ON ANY LETTER OR MATERIAL YOU SEND US. IF YOU RECEIVED A BARCODE FROM US, THE BARCODE SHOULD ACCOMPANY THIS DOCUMENT AND ANY OTHER MATERIAL YOU SUBMIT TO US.**

**SIGNATURE BLOCKS:** You should complete No. 5 and your representative (if any) should complete No. 6. If you are represented and your representative is not available to complete this form, you should also print his or her name, address, etc. in No. 6.

I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.

| 5. CLAIMANT'S SIGNATURE | DATE 05/03/2016 | 6. REPRESENTATIVE'S SIGNATURE | DATE 05/03/2016 |
|---|---|---|---|
| PRINT NAME Elizabeth Stone Nirenberg | | PRINT NAME Steven M. Oster   [X] ATTORNEY   [ ] NON-ATTORNEY | |
| ADDRESS        CITY, STATE, ZIP 1434 Potomac Ave, SE, #2, Wash, DC 20003 | | ADDRESS        CITY, STATE, ZIP 305 Center St. N, Vienna, VA 22180 | |
| TELEPHONE NUMBER 202-478-9438 | FAX NUMBER N/A | TELEPHONE NUMBER 202-596-5291 | FAX NUMBER 202-747-5862 |

## THE SOCIAL SECURITY ADMINISTRATION STAFF WILL COMPLETE THIS PART

7. Request received for the Social Security Administration on _____ by:_____
(Date)                    (Print Name)

(Title)          (Address)          (Servicing FO Code)          (PC Code)

8. Is the request for review received within 65 days of the ALJ's Decision/Dismissal?   [ ] Yes   [ ] No

9. If "No" checked:
(1) attach claimant's explanation for delay; and
(2) attach copy of appointment notice, letter or other pertinent material or information in the Social Security Office.

10. Check one:
[ ] Initial Entitlement
[ ] Termination or other

11. Check all claim types that apply:
[ ] Retirement or survivors (RSI)
[ ] Disability-Worker (DIWC)
[ ] Disability-Widow(er) (DIWW)
[ ] Disability-Child (DIWC)
[ ] SSI Aged (SSIA)
[ ] SSI Blind (SSIB)
[ ] SSI Disability (SSID)
[ ] Title VIII Only (SVB)
[ ] Title VIII/Title XVI (SVB/SSI)
[ ] Other - Specify:

APPEALS COUNCIL
OFFICE OF DISABILITY ADJUDICATION
AND REVIEW, SSA
5107 Leesburg Pike
FALLS CHURCH, VA 22041 - 3255

Form HA-520-U5 (01-2016) UF (01-2016)
Destroy Prior Editions

**TAKE OR SEND ORIGINAL TO SSA AND RETAIN A COPY FOR YOUR RECORDS**

2/2

**162**

# STEVEN M. OSTER

## ATTORNEY-AT-LAW

September 29, 2016

*via Facsimile (703.605.7101)*

Appeals Council, ODAR
5107 Leesburg Pike
Falls Church, VA 22041

    Re:   **Elizabeth Stone Nirenberg (555.81.6395)**

Dear Sir or Madam:

    Pursuant to the Appeals Council's September 6, 2016 letter, I am forwarding a statement about the facts and law in this case.

    Please call, email, or respond in writing to the following address: 305 Center St. North, Vienna, VA 22180. Thank you for your assistance.

                  Sincerely,

                  Steven M. Oster

Enc.

THE OSTER LAW FIRM
1850 M STREET N.W. • SUITE 280
WASHINGTON, DC 20036
202.596.5291(PHONE) • 202.747.5862 (FAX)
STEVE@OSTERLAWFIRM.COM

Exhibit AC 53
Page 1 of 6

**·163**

**BEFORE THE SOCIAL SECURITY ADMINISTRATION
OFFICE OF DISABILITY ADJUDICATION AND REVIEW
APPEALS COUNCIL**

In re:

                              **No. 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**

Elizabeth Stone

_____/

## CLAIMANT'S SUPPLEMENTAL STATEMENT

Claimant Elizabeth Stone ("Claimant"), by and through undersigned counsel, respect-

fully submits this supplemental statement with the permission of the Appeals Council (see

attached letter). Because Claimant (a) was without fault in connection with the Administra-

tion's overpayment of benefits, and (b) recovery of the overpayment would be against equity

and good conscience, she satisfies Congresses' and the Administration's requirements for a

waiver of collection.[1] Alternatively, pursuant to a decision of the United States District Court

for the District of Columbia, because the Administration deprived Claimant of valuable rights,

collection is unlawful. The decision of the Hearing Officer is contrary to both fact and law

and should be vacated.

## FACTUAL BACKGROUND

By way of background, the Administration contends Claimant received $19,690 in dis-

ability benefits to which she was not entitled between March 2006 and February 2008. The

Administration contends during that time Claimant was engaged in substantial work during

---

[1] Claimant is concurrently submitting a completed application for waiver to her local Admin-
istration office.

*2/6*

.164

that time frame, earning in excess of applicable ceilings. Claimant does not dispute the earnings

attributed to her during the relevant time period.

However, Claimant testified she met with the Administration three times between 2005

and 2007 in order to determine whether she was entitled to continued benefits while she was

working at Gallaudet University. In both meetings Claimant disclosed her employment and

the amount she was earning. She was completely candid. Subsequently, the Administration

confirmed her eligibility and **increased** her benefits. Claimant introduced two letters from the

Administration, dated April 7, 2006 and November 2, 2007, received after her in-person meet-

ings in which the Administration states:

> We checked our records to see if any changes to your benefits are
> necessary.
>
> We are increasing your benefit to give you credit for your earn-
> ings ... which were not included when we figured your benefit
> before.

(Hearing Exs. 1 and 2). The Administration continued to pay benefits to Claimant until Feb-

ruary 2008, when **Claimant** directed that benefits cease. Incredibly, thereafter she received a

bill for over $24,000.[2] There is no doubt that Claimant in good faith relied on the oral and

written advice she received from the Administration and should be granted a waiver.

---

[2] The Administration took a $5,079 federal tax return due Claimant in 2011, leaving a balance
sought of $19,690.

3/6

**165**

## ARGUMENT

### A. Recovery of Payments to Claimant is Contrary to the Purpose of the Social Security Act, Equity, and Good Conscience.

Congress has erected a statutory barrier to recovery of disability payments from "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C.A. § 404 (West). The Administration's criteria for waiver of recovery are set forth at 20 C.F.R. §§ 404.506(a) – 404.512. A person is "without fault" for an overpayment where she accepted payment in reliance on erroneous information from the Administration regarding the interpretation of the Social Security Act or the Administration's regulations. 20 C.F.R. § 404.510a (applicable to entitlement overpayments). Recovery of an overpayment is also "against equity and good conscience" if a person relied on erroneous information provided by the Administration. 20 C.F.R. § 404.512.

Ms. Stone's testimony, together with the documentary evidence, establish she relied on erroneous information provided by the Administration at three separate in-person meetings. Not only did the Administration inform her she was entitled to continued payments, on two separate occasions the Administration increased her payments.

In light of the Administration's written advice to Claimant, it was clearly erroneous for the Hearing Officer to find she accepted payments she knew or should have known were incorrect. 20 C.F.R. § 404.507(c). Claimant expressly denied knowing she was no longer entitled to the payments. The undisputed evidence established Claimant was completely forthcoming during her meetings with the Administration. She directed the Administration to stop the payments because she no longer needed the benefits, not because she believed they were

-3-

4/6

Case 1:17-cv-01952-CRC-DAR   Document 8-2   Filed 12/28/17   Page 39 of 61

**166**

being paid in error. Under the circumstances, the statute and the Administration's regulations require that recovery of the overpayment be waived.

### B. Because the Administration Deprived Claimant of her Right to Make Informed Decisions about her Benefits and Financial Well-Being, the Decision Below should be Vacated.

Alternatively, the decision below should be vacated because the Administration deprived Claimant of her right to make informed decisions about her work and financial well-being. Claimant's position is similar to the plaintiff's in Green v. Sec'y of Health, Ed. & Welfare, 218 F. Supp. 761, 764 (D.D.C 1963). There, the plaintiff engaged in part time work which the Agency subsequently determined exceeded the number of days allowable in order for her to retain valuable social security benefits. As is the case here, the plaintiff made full disclosure of her part-time employment and received benefits without fault for nearly three years before the Agency determined she was ineligible. Had the plaintiff been aware of the Agency's retroactive position, she might have chosen to relinquish the benefits but work additional hours, or not to work at all. In pertinent part, the court stated:

> Under the language of this regulation, plaintiff 'relinquished a valuable right'—namely, the right to decide intelligently how much she wanted to work. Plaintiff stated on a questionnaire dated June 26, 1960: 'I limited my earnings so that I would not earn over $1200 in any year.' Had plaintiff known that the 7-day rule was to be applied in a manner which would deprive her of all Social Security benefits, she might well have chosen to work much more than she did. On the other hand, she might have chosen not to work at all, and to receive, instead, the insurance benefits. By working, she earned only $13.10 per month more than she received in such insurance benefits. On the same questionnaire of June 26, 1960, plaintiff said that her brother was on a pension and was ill with a heart condition and arthritis. She might well have decided to stay home with him. **Plaintiff thus lost a valuable right—the right to choose intelligently among various alternatives—through no fault of her own.**

218 F.Supp at 764 (citation omitted; emphasis added).

5/6

**167**

The Administration deprived Claimant of the same valuable right—to make informed and intelligent choices about her financial situation and employment. Her situation is complicated by the Administration's unilateral decision to increase her benefits after she had requested review. By the time of the Administration reversed its position, Claimant's purported debt was enormous. Equity dictates she be granted a waiver.

## CONCLUSION

For all of the foregoing reasons, Claimant respectfully requests the Council vacate the decision below and find that recovery of the overpayment be waived as a matter of law.

September 29, 2016                    Respectfully submitted,

Steven M. Oster
OSTER LAW FIRM
1850 M Street, N.W., Suite 280
Washington, DC 20036
202.596.5291 (ph)
202.747.5862 (f)
703.577.8785
steve@osterlawfirm.com

*Counsel to Claimant Elizabeth Stone*

-5-

.168

# SOCIAL SECURITY ADMINISTRATION
## OFFICE OF DISABILITY ADJUDICATION AND REVIEW

## TRANSCRIPT

In the case of:

Elizabeth Stone

_____
Claimant

Claim for:

Period of Disability
Disability Insurance Benefits

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
_____
Social Security Number

_____
Wage Earner
(Leave blank in SSI Claims, or if the name
is the same as above.)

Hearing Held at:

Washington, DC
_____
(City, State)

January 19, 2016
_____
(Month, Day, Year)

by:

Thomas Ray
_____
(Administrative Law Judge)

**APPEARANCES:**

Elizabeth Stone, Claimant
Steven Oster, Attorney for Claimant
Tatiana Hernandez, Sign Language Interpreter

2

# INDEX OF TRANSCRIPT

169

In the Case of:                                              Account Number

Elizabeth Stone                                              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


                                                             Page Commencing


Testimony of Elizabeth Stone                          7

(The following is a transcript of the hearing held before 170
Thomas Ray, Administrative Law Judge, Office of Disability
Adjudication and Review, Social Security Administration, on
January 19, 2016, at Washington, DC, in the case of
Elizabeth Stone, Social Security number 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.  The claimant
appeared in person and was represented by her attorney,
Steven Oster.  Also present was Tatiana Hernandez, Sign Language
Interpreter.)

(The hearing commenced at 10:51 a.m., on January 19, 2016.)

OPENING STATEMENT BY ADMINISTRATIVE LAW JUDGE:

ALJ:  Good morning.  I'm Administrative Law Judge Thomas Ray.

This hearing concerns an appeal from an overpayment matter

involving Ms. Elizabeth Stone.  Let the record reflect that

Ms. Stone and her representative are present.  We also have a sign

language interpreter.  I need to ask the interpreter a few things

to make sure there's no objections to her, and that she's otherwise

qualified.  State your full name, please.

INT:  Tatiana Hernandez.

ALJ:  Okay.  Now are you over 18 years of age?

INT:  I am over 18, yes.

ALJ:  Okay.  And have you ever been a sign language

interpreter before?

INT:  I've worked as an interpreter for a while, yes.

ALJ:  Okay.  Have you ever done it for Social Security?

INT:  I've worked for Social Security also.

ALJ:  Okay.  Have you had any prior personal or professional

contact with the Claimant?

INT:  I have not, Your Honor.

171

ALJ:   Okay.   Have you had any discussions with me, or the representative, or the Claimant concerning the merits of this case?

INT:   I have not, Your Honor.

ALJ:   Okay.   Do you understand that you are not a reprehensive of the Claimant?

INT:   I am not.   I understand.   Yes.

ALJ:   Do you understand that your job as an interpreter is to accurately interpret the questions asked, and the answers given to the best of your ablity?

INT:   I do, Your Honor.

ALJ:   Do you understand that if the Claimant asks you a question, you are not to answer the question directly, but merely interpret her question to me, so that I may answer it?

INT:   I do, Your Honor.

ALJ:   Okay.   Counsel, do you have any objections to her serving as the interpreter for this matter?

ATTY:   None at all, Your Honor.

ALJ:   Okay.   You don't have to stand.   Okay?

ATTY:   Habit.

ALJ:   It's -- I understand.   Okay.   I find you to be more than sufficiently qualified to be the interpreter for this matter. Okay.   Now before the hearing began, the hearing reporter brought me in some documents.   And they're marked as Plaintiff's exhibit -- and obviously, we don't have Plaintiffs here, or Defendants, for that matter.   These will be renumbered in the way that we do

things, and then made part of the record.  Okay?          .172

ATTY:  Yes, Your Honor.

ALJ:  Now, counsel, did you have any other exhibits you want
to offer at this time?

ATTY:  No, Your Honor.

ALJ:  Okay.  Do you believe the record's complete?

ATTY:  I do, Your Honor.

ALJ:  Do you have any objection to any of the exhibits
contained in the record?

ATTY:  I do not, Your Honor.

ALJ:  The exhibits are admitted.

(Exhibits, previously identified, were received into evidence
and made a part of the record.)

ALJ:  Do you have a brief opening statement for me?

ATTY:  I do, Your Honor.

ALJ:  Go ahead.

ATTY:  My name is Steven Oster.  I represent Ms. Stone, who
received benefits from the agency, between 2003 and 2007.  Ms.
Stone was entitled to benefits because she was doing deaf.  The
agency claimed she had -- was overpaid by just under $20,000.
However, the overpayment was through no fault of her own.  Indeed,
it was despite her good faith efforts, over two years, to confirm
her entitlement with the agency's representatives.  Three times she
met with representatives of the agency.  In each of those meetings,
she was 100% truthful.  Twice, the agency responded in writing, not

**173**

only that she remained entitled to their benefits, but, in fact, they should be increased. Even after Ms. Stone frankly told the agency she no longer needed the benefits, the agency increased her payment. She was without fault in collection of the overpayment, and would both defeat the purposes of the Act, and the against equity in good conscience. We would like to introduce Ms. Stone's direct testimony, the exhibits, which Your Honor referred to a moment ago, and I would further request the opportunity, after the hearing, to file a five-page post-hearing Brief.

ALJ:  Well, I'll file you time to file a Brief, if you feel the need to do it after this hearing. So I don't know that I've seen you before, counsel. Is this the first time you've been in here with me?

ATTY:  It's the first time I've been in with Your Honor, yes.

ALJ:  Okay. I'm pretty liberal letting people file what they want to. Our rules are pretty liberal, so, you know, I'm not doing anything way out in left field. But very rarely do people feel the need to file any kind of post-hearing Brief. But that said, you do what you think is comfortable, and what you think is best for your client. Okay. I thank you very much for the opening. Ms. Stone, I'd like to ask you a few questions. And I'll give your lawyer a chance to ask you some questions as well. Let me just ask the interpreter a question. Are we speaking okay for you, too fast, too slow, or just right?

INT:  It's just right. Thank you, Your Honor.

ALJ:  Okay.  Let me know if we're going too fast.          .´174

INT:  I will.  Thank you.

(TATIANA HERNANDEZ was duly sworn to act as interpreter.)

(The claimant, ELIZABETH STONE, having been first duly sworn, testified as follows:)

EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q  Okay.  Now, Ms. Stone, let me just ask a little bit about your hearing loss.  Can you not hear me at all?

A  That is correct, Your Honor.

Q  Okay.  Do you -- can you read lips?

A  Well, I mean it's pretty much 80% guesswork.

Q  Okay.  Okay.  You're working right now.

A  Yes, Your Honor.  I am working.

Q  What is it that you do?

A  I'm a conflict resolution resource person.

Q  Who do you work for?

A  And -- well, I work for Gallaudet University.

Q  Okay.  And how long have you worked there?

A  I guess altogether, about ten years.

Q  Okay.  Now you were receiving benefits from Social Security.  You were not working at the time that you initially received benefits.  Is that fair?

A  That is correct, Your Honor.

Q  And then at some point, you got the job that you currently have.

·175

A   Well, yes.   I did later, Your Honor.

Q   Okay.   But what I mean is was there another job between not working and getting benefits, and then the current job you have now?

A   Well, I did an internship, Your Honor.   But that was part-time.

Q   Okay.   Was it a stipend, or paid, or unpaid?

A   Well, the amount that I was getting paid through the internship was below what the benefits -- because I was paid hourly.

Q   Okay.

A   But it was less than 20 hours a week.

Q   Okay.   Now when you got the job, full-time, how much were they paying you initially?   Do you remember?

A   Well, I started full-time, and so my salary -- it was in the fall of 2005, and that's when I started the full-time job.   I think my salary was -- I was salaried -- for full-time, it was right under 50,000.

Q   Okay.   Now when you -- at some point, did you go to Social Security and say, hey, I'm working.   I don't think I should get benefits, or did you wait until they contacted you?   What initially happened?

A   No.   I went in person immediately, Your Honor.

Q   And did you supply any evidence of how much money you were making?

A   Yeah.   I brought a paystub, and I explained to the person who was there that I was getting a salary.   I was working full-time, Your Honor.

Q   And so you think that was in the 2005, timeframe?

A   Well, yes.   I went in 2005, and again in 2006, in the fall. So --

Q   You went back the second time because you were still receiving the money, and you knew that wasn't right.

A   That is correct.

Q   Okay.   Did you spend the money that you received during that period of time, from Social Security, or did you put it aside in an account?

A   Well, I kept getting the money, and the money kept coming. I mean, I did save some, and then I also spent some.   I mean, I -- you know, because it was a direct deposit.

ALJ:   But you seem to have known that maybe you shouldn't have been receiving this money.

ATTY:   Am I allowed to object?

ALJ:   Well, you can tell me what your issue is.

ATTY:   I'll cross-examine when Your Honor's done.

ALJ:   Okay.

CLMT:   Okay.   So can you repeat the question again, Your Honor?

BY ADMINISTRATIVE LAW JUDGE:

Q   Well, the question is, why were you spending the money if

177

you're going and telling them, hey, I'm getting this money, but I'm

working?  You seem to have known that maybe you -- it wasn't your

money.  Is that not correct?

     A    Well, I was getting letters saying, you know, that I did

quality for the benefits.  So it was a little confusing for me,

Your Honor.  Yeah.  So I was very confused.  That was an

interpreter error, when she said a little confused.  I was very

confused.

     Q    Okay.  After 2006, did you go any other times?

     A    I did, Your Honor.

     Q    What happened when you went on those visits?

     A    Well, I went, and explained everything again.  I was very

clear.  I told them they needed to stop sending me benefits.  And

that was it.

     Q    Okay.  Now this is all before you got a notice saying you

had an overpayment.  Is that right?

     A    Yes.  All this happened before the overpayment letter.

That is correct.  You know, because that happened a while later.

It was much later.

     ALJ:  And, counsel, we were talking about things that can be

done after the hearing.  What I will usually, in a case like this,

do, is give people an opportunity to update their waiver request,

because, you know, time can go by, and people's financial situation

can change.  If you all would like to do that, I'll certainly give

you time to do that.

11

178

ATTY:   I would, Your Honor.   Thank you.

ALJ:   And -- but I want it to be on the same form, you know, a blank one.   And we can give you one of those forms.   And I want it to be signed, not just filled out, and not signed.   I get those sometimes.   Okay.   Sign and date it, so it's clear it's something the Claimant agrees to, and it's current.

ATTY:   Of course, Your Honor.

ALJ:   You know, her financial situation easily could have changed since she's done --

BY ADMINISTRATIVE LAW JUDGE:

Q   Okay.   So when you went through the process, sometimes people will agree to pay back $100 a month, or something like that. Have you agreed to make any payments at all at this point?

A   I've not, Your Honor.

Q   You have not.

A   No, Your Honor.   I have not.

Q   I just didn't hear her.

A   No, Your Honor.   I have not.

Q   Have you ever had an overpayment before?   Is this the first time you've gone through this?

A   No.   This is the first time, Your Honor.

ALJ:   Counsel, I'm going to let you ask questions.   But let's try to focus her to focus you -- let's assume that I agree with you, that she's not at fault.   Okay?   So then the real issue, to me, becomes waiver or, you know, you mentioned it's against good

it, and they said that they would stop the benefits.  And that's

what I was told.  You know, and at the time I was without an

interpreter.  So we were just writing back and forth.

Q  Did you -- okay, well you met three times.  Were you

without an interpreter all three times?

A  That is correct, yes.

Q  Did you ask for an interpreter prior to those three

meetings?

A  Yes.  I did.

Q  Did they agency say that they would provide an interpreter

at those meetings?

A  They did say they would provide an interpreter.

Q  At any time -- well, you've testified that you didn't need

the -- you didn't want the money, because you wanted to continue

working full-time.

A  Yes.  Um-hum.

Q  Did you express that in writing when you were passing notes

to the SSA representatives?

A  Yes.  I let them know that I was concerned, that I was

getting the benefits, and I wanted to let me know that I wanted to

keep my full-time job, you know, and I was telling them the amount

of money that I was getting, and that the benefits should stop.

Q  Did you know that you were making more money in your

full-time job than you were permitted in order to continue

receiving your benefits?

**.181**

A   No.  I did not.

Q   Did you rely on what the SSA representatives told you --

A   I did, yes.

Q   Let me finish my question.  Did you rely on what the SSA representatives told you in each of the three in-person meetings?

A   I did, yes.

Q   Did you --

A   And then I relied on the letters that I received also.

Q   That was my next question.  At some point, did you believe that what the agency was telling you verbally, and in writing, was incorrect?

A   I accepted what the agency told me.

Q   In 2008, you received another letter.  We've marked this as Plaintiff's 3.  We understand it's going to be renumbered.  For the record, it's a February 10th, 2008, letter, Notice of Proposed Decision from the Agency.  Do you receive that letter?

A   I did get that letter, yes.

Q   And prior to your receipt of the February 2008, letter, had the benefits stopped?

A   No.  They continued until then.

ATTY:  I'm now going to hand the witness Plaintiff's 4. Again, just for the record, it is a November 3rd, 2012, billing statement from the Social Security Administration.

ALJ:  Okay.  Now wait a second.  You said #4?

ATTY:  Yes, Your Honor.

ALJ:   I don't see the date.

ATTY:   It's in the middle.   Oh, I'm sorry.   The statement date is 10/17/12.

ALJ:   Okay.

ATTY:   My mistake.   That was the payment due date.

ALJ:   I've got it.

BY ATTORNEY:

Q   All right.   Do you recall, was this the first time -- prior to your receipt of Exhibit 4, had the agency made any specific demand for repayment on you?

A   I'm sorry.   Can you repeat the question?

Q   Sure.   Was that the first time the agency made a demand in which they asked for a specific amount of money from you?

A   It is, yes.

Q   Now have you ever received an itemized statement from the agency, indicating how they --

A   I have not.

Q   Okay.   It's really important, both for the record and also for the interpreter, let me finish the question, and then answer. Okay.   Has the agency ever provided you with an itemized statement indicating how they calculated the amount that you owed?

A   They had not.

Q   Has the agency ever -- other than what we've marked as Exhibit #3, the 2008, Notice of Proposed Decision -- has the agency ever provided you with a written explanation of why you were not

.183

entitled to the benefits that you received?

A   No.

Q   Do you now understand why the agency is taking the position that you were overpaid?

A   No.   I don't.

Q   Have we discussed -- are you aware that there were ceilings during the time that you were working full-time, above which if you earned money -- strike that.   Are you aware that pursuant to the agency's regulations, if you earned in excess of a certain amount of money per month, you were potentially not eligible for benefits?

A   Yes.

Q   Okay.

A   I was aware.

Q   And when did you learn that information?

A   At the time that I applied for benefits.

ATTY:   Okay.   I don't have anything else, Your Honor.

ALJ:   This document that's marked Plaintiff's Exhibit 5, can you show that to her?

ATTY:   Sure.

ALJ:   This is the -- it's a Social Security Important Information Notice sent to the Claimant.   It's got a date of April 27, 2011.   It says on there that they received a $5,079 of a federal payment that you weren't due.   Do you know what that was?   Was it like an income tax refund, or something?

CLMT:   Yeah.   It was a tax return, Your Honor.

ALJ:   Okay.   Have they taken any other moneys from you that
you're aware of?

.184

CLMT:   They have not.

ALJ:   Okay.

ATTY:   Can I clarify that, Your Honor.

ALJ:   Sure.

BY ATTORNEY:

Q   Was there another occasion when the agency levied on your
tax return?

A   Well, that actually happened three times.

Q   Do you recall, in -- when you and I first met with the
agency at the post office, office of the agency, the representative
agreed that pending an administrative hearing, there would be no
collection activity?   And subsequent to --

A   Yes.

Q   And subsequent to that time, you testified that the agency
levied three times on your tax return.   Correct?

A   Yes.   Correct.

Q   Other than the payment of just over $5,000, that Judge Ray
referred to you, did the agency give you back that money?

A   No.   Not the first time.

Q   Has the agency returned the $5,000 that is reflected in
Exhibit 5?

A   No.

Q   Do you recall, was the other levy, that was not returned to

you, did that occur before or after the $5,000 levy in 2011?

_185

    A   It happened after.

    ATTY:  Okay.

    ALJ:  I didn't hear the answer.

    CLMT:  It happened after.

    BY ATTORNEY:

    Q   Do you recall the amount of that levy?

    A   Can you repeat the question?

    Q   Sure.  The levy that occurred after 2011, was that money

returned to you?

    A   You mean the first time?

    Q   No.

    A   The second time then.

    Q   Yes.

    A   No.  So the first time they took it, but the second time --

the first time they did not.  The second time they did.

    Q   Okay.  But you said there were three letters.  Is that

correct?

    A   That is correct, yes.

    Q   Okay.  So the -- was the third levy returned to you?

    A   Yes.  They returned the money the second time and the third

time.  But they kept the first one.

    Q   Okay.  And when you're referring to the first one, you're

referring to the $5,000 payment reflected in Exhibit 5.

    A   Yes.

Q   So you -- other than the fact that you had never received an itemized statement, you have no basis to believe that the $19,690 balance, which is reflected in Exhibit 5, does not reflect deductions for levied payments.

A   Yes.

Q   Okay.

A   Correct.

ALJ:   Anything else?

ATTY:   No.  I just wanted to clarify the --

ALJ:   Okay.  I want to make sure I've got this.

ATTY:   Okay.

ALJ:   Okay, based on what I've heard here.

BY ADMINISTRATIVE LAW JUDGE:

Q   At some point they took $5,079 from you from a -- what would have been an income tax refund.

A   Yes.

Q   They took that all at once.

A   Yes, Your Honor.

Q   Okay.  And then after that, at some point, you had a meeting with Social Security, and they agreed they would not take any more money from you like that, pending this appeal.

A   Yes.  That is correct, Your Honor.

Q   Okay.  But they did do it.  They did twice take some money from you.  And at some point they refunded that back to you.

A   Yes.

Q   Is that right?

A   That's correct, Your Honor.

ALJ:   I just wanted to make sure I'm understanding you.   Okay.

ATTY:   We'll stipulate to that.   That is what happened.

BY ADMINISTRATIVE LAW JUDGE:

Q   Yeah.   Okay.   Well, I just -- again, this is -- you know, it's just a fact-finding conference.   It's a chance for all of us to make sure we're on the same sheet of music.   Okay.   Ms. Stone, is there anything about this matter that we have not asked you about that you would like to tell us?

A   No.   I don't think so, Your Honor.

Q   You have -- you're a college graduate.   Is that right?

A   Yes, Your Honor.

Q   What degree do you have, or degrees?

A   Well, I do have a graduate degree also, Your Honor.

Q   Okay.   What do you have?

A   In public administration.

Q   An undergraduate degree, a Bachelor of Art or Science?

A   A Bachelor's in Social Work.

Q   Okay.   And then a Master's.   Okay.   Are you working on a Ph.D.?

A   I'm not, Your Honor.

ALJ:   Not yet.   Okay.   Let me look briefly at the financials that we have, and see if there's anything I want to ask while I've got you here.   But, again -- and tell me -- and you can talk to

your client briefly, if you'd like.  How much time do you think you

need to complete a new financial form, the waiver form.  I'll give

you a little time.

ATTY:  How much time would you need to complete the waiver

form?

CLMT:  Maybe a week?

ATTY:  A week.  Why don't we say two weeks to be -- because

I'm going to be gone all of next week --

ALJ:  Yeah.  I think two --

ATTY:  -- for a trial.

ALJ:  I think a little more time is always better.

ATTY:  Yeah.

ALJ:  I mean, we're -- you know, we're always in a rush to do

everything.  But time gets away from us.

ATTY:  Um-hum.

ALJ:  Okay.  Today's the 19th.  But -- wait a second.  I'm

looking at the -- yeah, the 19th.  Two weeks is the 2nd of February.

Is that okay?

ATTY:  Yes, Your Honor.

CLMT:  Yes, Your Honor.

ALJ:  And if you need more time, let me know.  Now is that

enough time for you to do the little Brief that you wanted to?

ATTY:  Oh, yes, Your Honor.

ALJ:  Okay.  Now let me just look here.  I don't see any

mention of student loans.  Do you have any student loans?

CLMT:  I did get financial aid, Your Honor.

ALJ:  Okay.  So you don't currently own -- but do you currently owe any student loan?

CLMT:  I don't owe any student loan.

ALJ:  Okay.  Well, that's good for you.  Okay.  I don't see anything else in particular that I feel the need to ask about. Okay.  Anything else, counsel?

ATTY:  No, Your Honor.

ALJ:  Okay.  Okay.  Well, I thank you all.  You've been very helpful to me.  I appreciate you answering all of my questions. I'll give you two weeks to turn in a new waiver request form of your financial situation, and your counsel to prepare any closing argument, that he would like to make.  With that, we'll leave the record open for the time specified.  We'll go ahead and close the hearing, and go off the record.  You all are excused.

(The hearing closed at 11:25 a.m., on January 19, 2016.)

### C E R T I F I C A T I O N

I have read the foregoing and hereby certify that it is a true and complete transcription of the testimony recorded at the hearing in the case of Elizabeth Stone, held before Administrative Law Judge Thomas Ray.


_Lea A. Witmer /T.D._
Lea A. Witmer, Transcriber
Diaz Data Services, LLC


_Tina M. Decker_
Tina M. Decker, Proofreader
Diaz Data Services, LLC