# UNITED STATES DISTRICT COURT
# for the DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELIZABETH DEE STONE,** | |
| **Plaintiff,** | |
| v. | Case No. 1:17-cv-01952-CRC-DAR |
| **NANCY A. BERRYHILL, Acting Commissioner, SOCIAL SECURITY ADMINISTRATION,** | |
| **Defendant**. | |

### PLAINTIFF'S REPLY IN SUPPORT OF JUDGMENT OF REVERSAL AND OPPOSITION TO SECRETARY'S MOTION FOR JUDGMENT OF AFFIRMANCE

The Social Security Administration ("SSA" or the "Government") has undertaken a considerable effort to avoid the plain language of its own regulations and written determinations that require granting Plaintiff Elizabeth Dee Stone's Motion for Judgment of Reversal, (Dkt. 15), and denying the SSA's Motion for Judgment of Affirmance. (Dkt. 16). The Government (a) relies on a reason for upholding the decision below that contradicts the express findings of its own Administrative Law Judge ("ALJ") in violation of *SEC v. Chenery Corp.*, 318 U.S. 80 (1947) (*Chenery I*)[1], (b) denies evidence whose existence is beyond dispute, and (c) falls short of justifying the Secretary's failure to follow SSA's own regulations. For the reasons set forth in Plaintiff's Opening Brief, (Dkt. 15-1), and below, Plaintiff cannot be deemed at fault for relying on SSA's formal, written directives that she was entitled to benefits during the

---

[1] "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp* (*Chenery II*), 332 U.S. 194, 196 (1947)(summarizing the holding of *Chenery I*).

relevant time period. The decision below should be reversed or, in the alternative, remanded for further proceedings in accordance with the law.

## ARGUMENT

The government makes three arguments in its combined opposition to Plaintiff's Motion and memorandum in support of its Cross-Motion. First, contrary to the ALJ's express findings, the government for the first time argues that one document in the record establishes Plaintiff is "at fault" for the overpayment because she failed to report her earnings to the government. Second, ignoring Plaintiff's testimony and the ALJ's acceptance of that testimony, the government suggests that Plaintiff did not meet with SSA representatives on three occasions and, further, that she did not have a legitimate basis to rely on the government's confirmation of her entitlement to benefits. Third, the government claims the decision below is not against equity and good conscience solely on the basis of the ALJ's conclusion that she could afford repayment, without considering whether she relinquished a valuable right in reliance on the government's misinformation. Each of these arguments should be rejected.

I. **THE SECRETARY'S NEW ASSERTION THAT PLAINTIFF WITHHELD MATERIAL INFORMATION OR PROVIDED MATERIAL MISINFORMATION VIOLATES THE *CHENERY* RULE.**

Most of the Secretary's brief is devoted to the argument that a single document in the record establishes that Plaintiff was at fault for failing to report earnings; *i.e.*, that Plaintiff made an incorrect statement she knew or should have known to be incorrect, or failed to furnish information she knew or should have known to be material, relying on 20 C.F.R. §§

404.507(a) and (b). (Def. Mem., Dkt. 17, at 1-15).[2] **However, those grounds were not invoked below by the Agency**. To the contrary, the ALJ made the following findings of fact:

> In terms of [20 C.F.R. § 404.507] part (A), there is no suggestion in the record that [Plaintiff] made any statements that [she] knew or should have known to be incorrect, which resulted in the creation of the overpayment.
>
> In terms of [20 C.F.R. § 404.507] part (B), there is no suggestion in the record that [Plaintiff] failed to furnish material information.

(Administrative Record, Dkt. 8, at 21 (hereinafter cited as "R21")). The ALJ's decision was based solely on 20 C.F.R. § 404.507(c); that is, that Plaintiff accepted payments she should have known were incorrect, a conclusion unsupported by substantial evidence as set forth in Plaintiff's Motion.[3]

It is well settled that "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp* (*Chenery II*), 332 U.S. 194, 196 (1947)(summarizing the holding of *Chenery I*). The ALJ expressly rejected the grounds for affirmance now urged by the Secretary, and so too must this Honorable Court.

The instant case is similar to *Gagnon v. Colvin*, 234 F.Supp.3d 897 (N.D. Ill. 2017), in which the Secretary claimed the plaintiff failed to timely report his earnings based on a factual

---

[2] The Secretary filed two copies of its brief: one in support of its Motion for Affirmance, (Dkt. 16), and one in Opposition to Plaintiff's Motion for Reversal (Dkt. 17). For simplicity's sake, Plaintiff cites to the government's brief as "Def. Mem., Dkt. 17."

[3] The Appeals Council adopted the ALJ's decision without comment. (R5-8).

assertion not raised at the hearing or before the Appeals Council. In pertinent part, the court stated:

> The Commissioner contends that the problem is that Mr. Gagnon failed to "timely report[ ] his work activity to the agency when he changed the number of hours he was working as of December 2010." [Dkt. #20, at 3]. Neither the Appeals Council (R. 7–9) nor the ALJ (R. 16–19) mention anything about a change in hours in December 2010. Under the *Chenery* doctrine, the Commissioner's lawyers cannot rework the decisions of the Appeals Council or the ALJ to supply rationale to support the result. *See SEC v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016).

234 F.Supp.3d at 902. The court remanded the case for further proceedings. *Id. See also Enmrsh, Inc. v. Berryhill*, No. CV 15-1077 JCH/GBW, 2017 WL 3149367, at *6, n. 3 (D.N.M. Apr. 28, 2017), *report and recommendation adopted*, No. CV 15-1077 JCH/GBW, 2017 WL 3172873 (D.N.M. June 5, 2017) ("The Court may not accept post-hoc justifications of the Commissioner's decision.) (citing *Chenery I*); *Sharos v. Colvin*, No. 14-CV-1274-CJP, 2016 WL 2865995, at *6 (S.D. Ill. May 17, 2016) ("In advancing reasons not relied upon by the ALJ, the Commissioner violates the *Chenery* doctrine.).

The Secretary goes one step further in this case: it relies on justifications that the ALJ expressly rejected. Therefore, this Court cannot affirm the decision below on the grounds that Plaintiff failed to furnish material information or provided false information.[4]

---

[4] Plaintiff does not recall the document on which the government relies for this argument. However, she testified, and the ALJ found, that during the three meetings with SSA representatives between 2005 and 2007, Plaintiff disclosed that she was working full time and her earnings. (R21, 179-80). Furthermore, the government admits it was aware of her prior year earnings on an annual basis, (Def. Mem., Dkt. 17, at 16-17), and the record indicates the University

## II. THE PLAINTIFF MET WITH SSA REPRESENTATIVES, WAS MISINFORMED AS TO HER ELIGIBILITY, AND THE ALJ SHOULD HAVE CONSIDERED 20 C.F.R. §§ 404.510(a) AND 404.512(a).

The Secretary not only denies having misled Plaintiff, but would deny that the meetings between her the SSA representatives ever took place. The government states "no evidence of the meetings exist…." (Def. Mem., Dkt 17, at 20). To the contrary, Plaintiff testified in detail as to the three meetings she arranged and attended with SSA representatives to report that she was working full time and to determine her eligibility for benefits. (R174-183). The ALJ expressly credited her testimony that at the later meetings Plaintiff made the "proactive request that her benefits be terminated." (R21).

Furthermore, each of the meetings was followed by a letter from the government confirming Plaintiff's eligibility and increasing her benefit. (R29-30, 31-32, 49-50). Although the Secretary now asserts these letters were generated "automatically" by something called the "AERO Program," (Def. Mem., Dkt. 17, at 16-17), there is no record evidence regarding the program or that it played any role in generating the letters.[5]

In response to Plaintiff's assertion that the ALJ should have considered 20 C.F.R. § 404.510(a) and its related provision, 20 C.F.R. § 404.512(a), which relieve a claimant from responsibility to reimburse the government where she relied on misleading information from the agency, the Secretary argues Plaintiff was merely "confused" and that confusion does not

---

provided that same information in October, 2007. (R44-46). Yet SSA confirmed her eligibility and increased her benefit by letter in November, 2007, after the third in-person meeting at which Plaintiff disclosed pay stubs and her salary. (R49-50).

[5] Nor should an adverse inference be drawn from the absence of documentary evidence of the meetings. As discussed in Plaintiff's brief, the government admitted it had lost Plaintiff's records sometime prior to 2015. (Pl. Mem., Dkt. 15-1, at 7).

constitute misinformation. The Secretary relies on *Gorman v. Astrue*, 2010 WL 427752 (W.D. Mo. 2010). However, that case is inapposite. In *Gorman*, the court expressly found that "Plaintiff was able to identify no 'misinformation' but instead claimed that his own confusion constitutes misinformation." *Id.* at *11.

By contrast, Plaintiff has identified written documentation from the government confirming her eligibility for benefits after disclosing her earnings and requesting that her benefits be terminated. (R49-50; 177). The ALJ agreed that "it is understandable that [Plaintiff] was confused based on the correspondence from SSA notifying her of the increases in her benefits, after she was told the benefits would be stopped, as requested." (R21).

The government's reliance on *Wiles v. Colvin*, 13 F.Supp. 3d 1007 (D.Neb. 2014), is also misplaced. In *Wiles*, the claimant's mother had contacted SSA several times to confirm the claimant's payments, had been told the payments were correct, and relied on that information in continuing to accept payments on claimant's behalf. *Id.* at 1015. As here, the ALJ did not address application of 20 C.F.R. §§ 404.510(a) and 404.512(a), which state, respectively, that an individual is deemed to be without fault if she relies on erroneous information from an official source within SSA, and that in such situations recovery should be waived as against equity and good conscience. Rather than remand the case, the Court held that the Secretary's acceptance of the claimant's mother's testimony was a sufficient basis to rule in the claimant's favor:

> Because the ALJ did not directly address this issue, the Court has considered whether to remand the case to the Commissioner for express findings…. But the Court does not find it necessary to do so in this case. At no point during the administrative proceedings did the ALJ, or any other representative of the SSA, question Judy's account. Before this Court, the Commissioner has accepted Judy's claim that she "made inquiries to SSA, attempting

> to determine the accuracy of payments." And as noted above, where the record is consistent with a beneficiary's testimony, any doubts should be resolved in favor of finding that the beneficiary actually did receive misinformation…. So, the Court finds that the Commissioner has conceded the accuracy of Judy's testimony and evidence regarding the misinformation she received from SSA representatives…. The Court is able to reach a conclusion on the record presented, and the Court believes that " 'this case has gone far enough.' "

*Id.* (citations omitted).

To be sure, in this Court the government has not conceded Plaintiff's meetings with SSA representatives or that she was misinformed during those meetings.⁶ However, ALJ Mercer expressly found that Plaintiff received notifications of increases in her benefits after she was told the benefits would stop at her request, (R21). The ALJ cannot have made that finding without also having credited Plaintiff's testimony regarding her meetings with SSA representatives. She received written confirmation of her eligibility, (R49-50), **after** the meeting referred to by the ALJ and **after** SSA indisputably was in possession of complete information as to her earnings. (R44-46).

---

⁶ That is, except to the extent Plaintiff's testimony supports the Secretary's argument that the ALJ properly considered her disability. Plaintiff testified that the SSA failed to provide her a sign interpreter at the three meetings, that lip reading was "80% guesswork," and that communications were reduced to passing notes back and forth. (R174, 179-80). The government asserts that "when discussing what was being expressed 'in writing when you were passing notes to the SSA representative,' Plaintiff detailed those written conversations." (Def. Mem., Dkt. 17, at 20). That Plaintiff was able to pass notes – particularly regarding as complicated a question as one's eligibility for Title II benefits – does not mean the ALJ properly considered her disability. In fact, nothing in the record indicates ALJ Mercer considered whether the SSA's failure to provide an interpreter caused or contributed to the overpayment, the misinformation, or Plaintiff's reliance on the misinformation.

Accordingly, this Court should reverse the decision below or, in the alternative, remand the matter for proper application of 20 C.F.R. §§ 404.510(a) and 404.512(a).

### III.   THE FINDINGS THAT PLAINTIFF WAS NOT WITHOUT FAULT AND THAT RECOVERY WOULD NOT BE AGAINST EQUITY AND GOOD CONSCIENCE ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The ALJ's finding that Plaintiff was not without fault is inherently erroneous due to his failure to consider the two regulations discussed above. Even were that not the case, the decision is not supported by substantial evidence. As noted above, the ALJ's conclusion that Plaintiff was not without fault is based solely on his finding that Plaintiff accepted payments she either knew or could have been expected to know were incorrect. (R21). That finding, in turn, is based on Plaintiff's "apparent understanding of the income limit rules, evidenced by her proactive request that benefits be terminated." (*Id.*).

The government's brief does not address this in any detail, focusing instead on various record documents that the ALJ did not mention in his decision and challenging the very testimony that the ALJ apparently credited. Nor does the government address Plaintiff's assertion that the ALJ did not make an express finding as to Plaintiff's credibility.[7] Without such a finding, the ALJ's rationale is lacking in foundation and provides an insufficient basis for this Court's review.

Furthermore, knowledge of income limits does not equal knowledge of eligibility; SSA's regulations provide for months of benefits even if a claimant earns at or over the income

---

[7] It is within this Court's discretion to deem Plaintiff's argument on this point to have been conceded by the government. *See Kone v. District of Columbia*, 808 F.Supp. 2d 80, 83 (D.D.C. 2011) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.") (quoting *Rosenblatt v. Fenty*, 734 F.Supp. 2d 21, 22 (D.D.C. 2010))

limit, through Trial Work Periods and Extended Periods of Eligibility. *See generally* 20 C.F.R. §§ 404.1592, 404.316. 404.325, 404.337, and 404.401. The rules are complicated and allow for reinstatement and month by month determinations as to eligibility for benefits. *Id.* (R47-48). The income limits themselves are subject to change from year to year.

Plaintiff testified without qualification that after accepting a full-time position at the University, she "went in person immediately" to the SSA, and brought with her a "paystub and explained to the person there that [she] was getting a salary." (R175-76). She further testified that at the subsequent meetings she again told SSA "the amount of money that [she] was getting and that the benefits should stop." (R180). This testimony, if credited, undermines Secretary's reliance on the 2007 document that consumes so much of the government's brief.

While the ALJ clearly credited some of Plaintiff's testimony, he did not specify if, and if so to what extent, he chose not to credit other portions of her testimony. In this case, where the ALJ acknowledged Plaintiff was "understandably confused" by SSA's misinformation, the absence of any discussion of Plaintiff's credibility impairs this Court's ability to determine whether the decision is based on substantial evidence. *See Lieberman v. Shalala*, 878 F.Supp. 678, 682 (S.D.N.Y. 1995) ("Where, as here, an assessment of credibility is necessary to determine whether a claimant was without fault, the ALJ must make an explicit finding for the record….").

In addition, because SSA gave Plaintiff erroneous official information as to her eligibility for benefits, recovery is deemed to be against equity and good conscience. 20 C.F.R. § 512(a). Even were that not the case, the ALJ's finding that recovery from the Plaintiff would not be against equity and good conscience is not supported by substantial evidence. Instead, ALJ Mercer summarily states there is "no evidence the claimant has changed her position for

the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself…." (R22).

As set forth in Plaintiff's opening brief and not disputed by the government, that conclusion flies in the face of Plaintiff's testimony that she initiated the meetings with SSA precisely because she had the opportunity to work full time, wanted to work full time, and wanted to confirm whether and, if so, how that work affected her entitlement to benefits. (R174-76; 180-81). Had SSA provided Plaintiff with accurate information, she could have made intelligent decisions as to her work and benefits, including working full-time, part-time, for how long based on family matters, *etc*. She was deprived of this valuable right by the SSA's erroneous information. *See Green v. Sec'y of Health, Ed., & Welfare*, 218 F.Supp. 761, 764 (D.D.C. 1963) (SSA misinformation caused plaintiff to lose "a valuable right – the right to choose intelligently among various alternatives….").

## CONCLUSION

For all of the foregoing reasons and those in her opening brief, Plaintiff respectfully requests this Honorable Court reverse the Secretary's decision, order that the government return to Plaintiff the $9,862 seized from her, take no further action to recover any overpayment, and award Plaintiff her attorneys' fees.

April 27, 2018                               Respectfully submitted,

**/s/ Steven M. Oster**
Steven M. Oster
OSTER LAW FIRM
1850 M Street, N.W., Suite 280
Washington, DC 20036
202.596.5261 (p)
202.747.5862 (f)
steve@osterlawfirm.com

*Attorney for Plaintiff Elizabeth Dee Stone*

-10-

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed using the Court's CM/ECF system and thereby served on counsel of record; I further certify that I sent a courtesy copy to the government's counsel, Lauren Donner Chait, by electronic mail.

April 27, 2018 /s/ **Steven M. Oster**
Steven M. Oster