# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ELIZABETH DEE STONE,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security,

    Defendant.

Civil Action No. 17-01952
CRC/DAR

## **REPORT AND RECOMMENDATION**

Plaintiff Elizabeth Dee Stone ("Plaintiff") commenced this action against the Commissioner of Social Security ("Defendant"), pursuant to 42 U.S.C. § 405(g), seeking reversal of the decision of the Administrative Law Judge ("ALJ'') denying Plaintiff's application for waiver of overpayment of Disability Insurance Benefits. *See* Complaint (ECF No. 1) ("Compl.") at ¶ 1. This matter was referred to the undersigned United States Magistrate Judge for "full case management up to and excluding trial." Referral to Magistrate Judge (ECF No. 3); 10/03/2017 Minute Order Referring Case. Pending for consideration by the undersigned are Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Motion") (ECF No. 15) and Defendant's Motion for Judgment of Affirmance ("Defendant's Motion") (ECF No. 16).

Upon consideration of the motions, the memoranda in support thereof and opposition thereto, and the entire administrative record, the undersigned will recommend that the Court deny Plaintiff's motion and grant Defendant's motion.

I.   **Background**

On August 27, 2003, Plaintiff applied for Disability Insurance Benefits, pursuant to Section 401 of the Social Security Act (the "Act"), alleging an inability to work beginning January 1, 2003 by reason of complete deafness since birth. Administrative Record ("AR") (ECF No. 18) at 34-37.

On March 6, 2004, Defendant issued a Notice of Award informing Plaintiff of her entitlement to monthly disability benefits of $1,139.00 beginning February 2004. *Id*. at 39. The Notice of Award was accompanied by a series of pamphlets containing pertinent information about Plaintiff's disability benefits. Memorandum in Support of Defendant's Motion for Judgment of Affirmance ("Def.'s Mem.") (ECF No. 16) at 6. Plaintiff was also notified of a Trial Work Period ("TWP") and Extended Period of Eligibility ("EPE") during which she was entitled to receive benefits while her earnings exceeded the Act's threshold for substantial gainful activity ("SGA''). *See* Compl., ¶¶ 12-13. Plaintiff thereafter became employed part-time at Gallaudet University, eventually accepted a full-time position there in September 2005, and continued to receive monthly disabilities benefits. AR at 197.

Plaintiff received notices of changed benefits in November 2004, April 2006, and November 2007, by which she was informed of retroactive increases in her monthly benefit to $1,149.00, $1,286.00, and $1,530.00, respectively. *Id.* at 42-45, 63-64. After becoming employed full-time, and prior to receiving notice of overpayment, Plaintiff met with Social Security Administration ("SSA") representatives on one occasion in 2005, 2006 and 2007 to communicate her confusion, disclose her earnings, and to request that she stop receiving monthly disabilities benefits. *Id.* at 197-199. Notwithstanding her confusion, Plaintiff continued to deposit and spend each monthly benefit she received from SSA thereafter. *Id.*

Before receiving the third notice of changed benefit in November 2007, Plaintiff received an SSA notice requesting additional employment information in connection with any additional earnings that previously appeared on her "Work Activity Report." *Id.* at 69-72. Plaintiff failed to indicate on the accompanying "Work Activity Report" that she worked since 2004 and that, more specifically, she engaged in SGA at Gallaudet University since 2005. *Id*. at 46-53.

On March 15, 2008, SSA sent Plaintiff a letter explaining she was not entitled to benefits for "March 2006 through March 2007, May 2007 through October 2007, and January 2008 and continuing[,]" in light of learning of her relevant SGA history at Gallaudet University through information transmitted from the IRS. Def.'s Mem. at 9. In the letter, SSA notified Plaintiff that she was overpaid by $29,802.00 in benefits, and instructed her to refund the overpayment. AR at 68-72. SSA on two occasions, received federal payments she was due and applied them toward her overpayment balance resulting in an updated balance of $19,690.00. *Id.* at 82, 91.

On February 7, 2012, Plaintiff requested a waiver of overpayment, which was subsequently denied on August 8, 2012 after she attempted and failed five times to schedule a personal conference with SSA. *Id.* at 109. SSA communicated to Plaintiff that the denial was issued because she "worked and earned over SGA [sic], claimant knew or should have known that she could not work and perform SGA and received Social Security Disability benefits at the same time," and because she "cannot be found without fault." *Id.*

Following an administrative hearing in January 2016, Plaintiff's subsequent request for waiver was denied by the ALJ who concluded that Plaintiff "was not without fault in causing the overpayment," that "[r]ecovery of the payment does not defeat the purpose of Title II of the Act," and that "[r]ecovery of the overpayment would not be against equity and

good conscience." AR at 28-32; *see also* 20 C.F.R. § 404.506-404.510. Plaintiff's subsequent request that the ALJ's decision be reviewed by the Appeals Council was denied on July 21, 2017. AR at 7. On September 23, 2017, Plaintiff filed an action in this Court for reversal of the decision of the ALJ. *See generally* Compl.

## II.   Contentions of the Parties

The Plaintiff contends that the ALJ's decision must be reversed because it is not supported by substantial evidence, is contrary to settled SSA policy and federal law, and fails to account for Plaintiff's disability. Memorandum in Support of Plaintiff's Motion for Judgment of Reversal ("Pl.'s Mem.") (ECF No. 15-1) at 1. Specifically, Plaintiff argues that the ALJ's finding that Plaintiff is not without fault in causing the overpayment was arbitrary, capricious, and otherwise not supported by substantial evidence because Plaintiff relied on SSA's formal notifications that she was entitled to the benefits at issue on three separate occasions. *Id.* Plaintiff also contends that SSA, pursuant to 28 U.S.C. § 1983, violated her right to due process of law when it "took from Plaintiff over $10,000 in federal income tax returns due to her[,]" as payment toward her overpayment balance. Compl., ¶ 2.[1]

Defendant counters that Plaintiff failed to timely report her work activity after December 2004 and that substantial evidence indicates she is not without fault for causing

---

[1] In Count Three of her complaint, Plaintiff alleges that Defendant seized her tax refunds "without due process of law[,]" violating her civil rights under 42 U.S.C. § 1983. Complaint, 67-70. Although Plaintiff includes in her request for relief the return of the tax refunds, she does not address the Section 1983 claim. The undersigned will recommend that further consideration of the Section 1983 claim be stayed pending the determination of the pending cross-motions.

the overpayment.  Memorandum in Support of Defendant's Motion for Judgment of Affirmance ("Def. 's Mem") (ECF No.16) at 3.

### III. Statutory Framework

The Social Security Act provides that the United States cannot recover an overpayment of benefits if (1) the individual is without fault and (2) such recovery would defeat the purpose of Title II of the Act or otherwise "would be against equity and good conscience."  42 U.S.C. § 404(b)(l).  An overpaid individual is "at fault" when the overpayment was a result of (1) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect," (2) "[f]ailure to furnish information which he knew or should have known to be material, or (3) *"acceptance of a payment which he either knew or could have been expected to know was incorrect*."  20 C.F.R. § 404.507 (emphasis supplied).  A showing of bad faith is not required to find an overpaid individual is at fault. *Villate v. Sullivan*, 862 F. Supp. 514, 517 (D.D.C. 1994).  An "at fault" determination is highly subjective, *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 598 (11th Cir. 2016), as SSA must consider all pertinent circumstances, including "age, intelligence, and any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language)."  42 U.S.C. § 404(b)(2); *see Feenster v. Colvin*, 220 F. Supp. 3d 123, 126 (D.D.C. 2016).  Any fault attributable to the SSA does not relieve the overpaid individual if liability if he or she is also at fault.  20 C.F.R. § 404.507; *see Feenster*, 220 F. Supp. 3d at 126.  Ultimately, the claimant bears the burden of proof that he or she was without fault in causing the overpayment. *Feenster*, 220 F. Supp. 3d at 126.

Recovery of an overpayment from an individual "without fault" would "defeat the purpose of [Title II of the Act]" if it "deprive[s] a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508; *see Feenster*, 220 F. Supp. 3d at 126-27. This includes consideration of whether the person "needs substantially all of his current income (including Social Security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). "Ordinary and necessary" living expenses include:

(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;

(2) Medical, hospitalization, and other similar expenses;

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

20 C.F.R. § 404.508(a)(1)-(4).

Recovering overpayment is "against equity and good conscience" if the person (1) changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself, or (2) was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment. § 404.509(a)(l)-(2). The individual's

financial circumstances are not material to a finding of against equity and good conscience. § 404.508(b).

### IV.  Applicable Standard

Claimants may seek judicial review in a district court of "any final decision of the Commissioner of Social Security[.]"  42 U.S.C. § 405(g).  The court must affirm the Commissioner's decision if it is "supported by substantial evidence and is not tainted by an error of law."  *Perry v. Colvin*, 159 F. Supp. 3d 64, 67 (D.D.C. 2016) (citing *Smith v. Bowen,* 826 F.2d 1120, 1121 (D.C. Cir. 1987).  Substantial evidence is defined as "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Butler v. Barnhart,* 353 F.3d 992, 999 (D.C. Cir. 2004) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  Substantial evidence requires "more than a scintilla, but can be satisfied by something less than a preponderance of evidence."  *Id.* (citation and internal quotation marks omitted).

The District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder."  *Rossello v. Astrue,* 529 F.3d 1181, 1185 (D.C. Cir. 2008).  Even if substantial evidence exists, the court will not uphold the Commissioners findings if they were reached "by applying an erroneous legal standard."  *Jackson v. Barnhart,* 271 F. Supp. 2d 30, 33 (D.D.C. 2002) (citation omitted). The court must "carefully scrutinize the entire record," but "may not reweigh the evidence and replace the [Commissioner's] judgment regarding the weight of the evidence with its own," when determining if the Commissioner's decision was tainted by an error of law. *Id.* at 34 (citation omitted; *see also Perry v. Colvin,* 159 F. Supp. 3d at 67).  The Plaintiff bears the "burden of demonstrating that the Commissioner's decision [was] not based on

substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue,* No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted).  A district court has discretion "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing." *Ademakinwa v. Astrue,* 696 F. Supp. 2d 107, 110 (D.D.C. 2010) (quoting 42 U.S.C. § 405(g)).

**V.   Discussion**

The undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff was at fault in causing or accepting overpayment.  First, the ALJ found that the Plaintiff's testimony "indicates that she knew that there were income limits in order to maintain eligibility[.]" AR at 30.  At Plaintiff's administrative hearing held on January 19, 2016, Plaintiff testified she became aware of the income limits, as it relates to precluding monthly benefits, upon her application for monthly benefits.  *Id.* at 205.  Plaintiff received, with her notice of reward on March 6, 2004, detailed instructions and information concerning her prospective eligibility to receive benefits upon an improved health condition or changes in employment or income.  *Id.* at 39-41.  Plaintiff's testimony shows that she had a clear understanding of the income limits to her monthly benefits.  Thus, there is sufficient evidence in the record that Plaintiff was aware of the income limits on her eligibility for benefits.

Second, the ALJ found that the Plaintiff "knew she was no longer eligible[,]" evidenced by her testimony and "proactive request that benefits be terminated." AR at 30.  The ALJ asked Plaintiff if she, before receiving notice of overpayment, scheduled in-person meetings with SSA "because you were still receiving the money, and you knew that wasn't

right." *Id*. at 198. The Plaintiff answered, "[t]hat is correct." *Id*. Plaintiff acknowledged that her motive for meeting with SSA representatives was borne from her knowledge or suspicion that the income from her full-time employment was such that she was precluded from receiving further monthly benefits. *Id*. Because Plaintiff sought out SSA to correct her benefit payments, the undersigned finds that there is substantial evidence in the record that she should have known she was no longer eligible for benefits due to her SGA.

Finally, the ALJ found that the Plaintiff "continued to accept benefit checks and spend that money received." *Id*. at 30. Notwithstanding Plaintiff's knowledge that she was no longer eligible to receive monthly benefits, she continued to, by her testimony, accept benefit checks and spent the overpayment. *Id.* at 198-99. Though Plaintiff testified upon her counsel's cross-examination that she primarily relied on the SSA representations during three meetings that the benefits would stop, *id*. at 202-03, she continued to accept and spend the continued overpayments after those meetings. *Id*. at 198. Therefore, because the ALJ relied on sufficient evidence that the Plaintiff knew she was receiving an overpayment, yet proceeded to use and spend those overpayments, the ALJ was well within its discretion to conclude that the Plaintiff "accepted [ ] a payment which [s]he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507.

Plaintiff argues that she was improperly found "at fault" when the ALJ failed to apply 20 C.F.R. § 404.510(a). Plaintiff's argument was that, as contemplated in 20 C.F.R. § 404.510(a), she relied on the SSA's erroneous information in the notices of change in benefits dated November 4, 2004, April 7, 2006, and November 2, 2007. Pl.'s Mem. at 12-14. The undersigned disagrees. The relevant part of Section 404.510a provides that:

> Where an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the [SSA], . . . *with respect to the interpretation*

9

> *of a pertinent provision of the Social Security Act or regulations pertaining thereto . . . , such individual, in accepting such overpayment will be deemed to be without fault.*

20 C.F.R. § 404.510a (emphasis added).

Here, the erroneous information regarding Plaintiff's entitlement to benefits does not constitute an interpretation of the Act or pertinent regulations. This Court has explicitly held that SSA letters notifying one's entitlement to benefits "do not purport to make any explicit or specific interpretation." *Feenster,* 220 F. Supp 3d at 129 (quoting *Valley v. Comm'r of Soc. Sec.,* 427 F.3d 388,393 (6th Cir. 2005) (discussing the application of 20 C.F.R. § 404.510a in the context of waiver of overpayment). Further, if these documents constituted official "interpretation" of the statute or regulations sufficient to trigger the good conscience exception to repayment, virtually all Social Security benefit recipients would be entitled to waivers of repayment if they received benefits of any kind and a letter describing those benefits. *Id.* Section 404.510a does not apply in the instant case. Therefore, Plaintiff's purported reliance on the erroneous information concerning her eligibility in the notices of changed benefits does not render her without fault.

Plaintiff further argues that the ALJ, in finding fault, failed to consider the Plaintiff's linguistic limitations in accordance with 42 U.S.C. § 404(b)(2) and 20 C.F.R. § 404.507. *See* Pl.'s Mem. at 16. The linguistic limitation evidence to which Plaintiff points includes the SSA's failure to provide a sign interpreter at the three meetings where she attempted to update her SGA. *Id.* at 16-17. However, the ALJ addressed in the findings that Plaintiff made proactive requests to terminate her benefits. AR at 30. Plaintiff further testified that her proactive meetings to notify SSA of the SGA, despite lacking a sign-language interpreter, were conducted through exchanging notes. *Id.* at 202-03. Plaintiff testified that, in writing,

she "let them know she was concerned, that [she] was getting the benefits, and [she] wanted to let [them] know the amount of money that [she] was getting, and that the benefits should stop." *Id*. Therefore, the ALJ sufficiently considered the Plaintiff's language limitations in finding fault. *See Erickson v. Colvin*, 2015 WL 757363, at *2 (D. Minn. Feb. 23, 2015) (finding ALJ properly considered linguistic limitations in finding claimant at fault, despite communication breakdown between claimant, sign language interpreter, and SSA representative.)

Plaintiff failed to meet her burden of showing that she was not at fault in causing the overpayment, *See Feenster,* 220 F. Supp. 3d at 126.  Therefore, the ALJ correctly relied on substantial evidence in finding Plaintiff was "not without fault."  Because there was substantial evidence that Plaintiff was "not without fault," the court need not address the issue of whether recovery of the overpayment would defeat the purpose of Title II or be against equity and good conscience. *See* 42 U.S.C. § 404(b); *see also Stevens v. Colvin*, 232 F. Supp. 3d 605, 613 (D. Del. 2017).  The ALJ correctly determined that Plaintiff is not entitled to waiver of the overpayment.

**VI.   Conclusion**

For the foregoing reasons, it is, this 26th day of February, 2019, hereby

**RECOMMENDED** that Plaintiff's Motion for Judgment of Reversal (ECF No. 15), be **DENIED**, and that Defendant's Motion for Judgment of Affirmance (ECF No. 16), be **GRANTED**.

                                          DEBORAH A. ROBINSON
                                          United States Magistrate Judge

Case 1:17-cv-01952-CRC   Document 22   Filed 02/26/19   Page 12 of 12

Stone v. Berryhill

**Within fourteen days, either party may file written objections to this report and recommendation. The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each objection. In the absence of timely objections, further review of issues addressed may be deemed waived.**

Stone v. Berryhill

12